UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JAMES PARSHALL, | : |
| | : Case No. 1:21-cv-377 |
| Plaintiff, | : |
| | : |
| vs. | : **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | : |
| CELLULAR BIOMEDICINE GROUP, INC., TERRY A. BELMONT, HANSHENG ZHOU, EDWARD THOMAS SCHAFER, CHUN KWOK ALAN AU, JACKY (GANG) JI, TONY (BIZUO) LIU, STEVE (WENTAO) LIU, and DARREN O'BRIEN | : JURY TRIAL DEMANDED |
| Defendants. | : |

Plaintiff James Parshall ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Cellular Biomedicine Group, Inc. ("CBMG" or the "Company") and the members of CBMG's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which CBMG will be acquired by CBMG Holdings ("Parent"), and CBMG Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction"). Parent and Merger Sub were formed on behalf of a consortium consisting of (i) Tony (Bizuo) Liu ("Tony Liu"), Chief

Executive Officer ("CEO") of the Company, and certain other members of CBMG management (Yihong Yao, Li (Helen) Zhang and Chengxiang (Chase) Dai) (collectively, the "Management Rollover Stockholders"); (ii) certain Rollover Stockholders[1] (together with the Management Rollover Stockholders, the "Consortium Rollover Stockholders"); and (iii) certain Equity Investors[2] (together with Parent, Merger Sub and the Consortium Rollover Stockholders, the "Buyer Consortium").

2.  On August 12, 2020, CBMG issued a press release announcing that it had entered into an Agreement and Plan of Merger dated August 11, 2020 (the "Merger Agreement") with the Buyer Consortium. Under the terms of the Merger Agreement, each CBMG stockholder will be entitled to receive $19.75 in cash for each share of CBMG common stock they own (the "Merger Consideration"), other than the shares owned by Parent or its subsidiaries, the shares held by CBMG as treasury stock, and certain shares held by the Consortium Rollover Stockholders and Novartis Pharma AG (together, the "CBMG Rollover Stockholders"). The CBMG Rollover Stockholders collectively hold approximately 51.5% of the Company's outstanding shares. The Proposed Transaction is valued at approximately $217 million.

3.  On December 29, 2020, CBMG filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that CBMG stockholders vote in favor of the Proposed Transaction, omits or misrepresents material

---

[1] The "Rollover Stockholders" refers to Dangdai International Group Co., Limited ("Dangdai"), Mission Right Limited ("Mission Right"), Wealth Map Holdings Limited ("Wealth Map"), Earls Mill Limited ("Earls Mill"), Sailing Capital Overseas Investments Fund, L.P. ("Sailing Capital"), OPEA SRL ("OPEA"), Maplebrook Limited ("Maplebrook"), Full Moon Resources Limited ("Full Moon"), Viktor Pan and Zheng Zhou.
[2] The "Equity Investors" include Yunfeng Fund III, L.P. ("Yunfeng Capital"), TF Capital Fund III L.P. ("TF Capital"), Velvet Investment Pte. Ltd. ("Velvet Investment"), and Tony Liu (in his capacity as an equity investor).

information concerning, among other things: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the financial advisor to the Special Committee of the Board (the "Special Committee"), Jefferies LLC ("Jefferies"); and (ii) the background process leading to the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, CBMG's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. CBMG's principal executive offices are located in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of CBMG.

9. Defendant CBMG is a Delaware corporation with its principal executive offices at 1345 Avenue of Americas, 15th Floor, New York, New York 10105. The Company develops proprietary cell therapies for the treatment of cancer and degenerative diseases. The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol "CBMG."

10. Defendant Terry A. Belmont ("Belmont") has been Chairman of the Board since January 2016 and a director since December 2013. Defendant Belmont previously served as Vice Chairman of the Board from March 2015 to January 2016.

11. Defendant Hansheng Zhou ("Zhou") has been a director of the Company since July 2016. Defendant Zhou is affiliated with Dangdai, a member of the Buyer Consortium which owns approximately 11.7% of the Company's outstanding shares.

12. Defendant Edward Thomas Schafer ("Schafer") has been a director of the Company since October 2019.

13. Defendant Chun Kwok Alan Au ("Au") has been a director of the Company since November 2014.

14. Defendant Jacky (Gang) Ji ("Ji") has been a director of the Company since October 2016.

15. Defendant Tony Liu has been CEO of the Company since February 2016, Chief Financial Officer ("CFO") since January 2014, and a director since February 2013. Defendant Tony Liu is a member of the Buyer Consortium and owns approximately 4.3% of the Company's outstanding shares.

16. Defendant Steve (Wentao) Liu ("Steve Liu") has been a director of the Company since October 2013.

17. Defendant Darren O'Brien ("O'Brien") has been a director of the Company since May 2019. Defendant O'Brien is a Managing Director and Partner of Sailing Capital, a member of the Buyer Consortium which owns approximately 8.8% of the Company's outstanding shares.

18. Defendants identified in paragraphs 10–17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. Parent is an exempted company with limited liability incorporated under the laws of the Cayman Islands.

20. Merger Sub is a Delaware corporation and wholly-owned subsidiary of Parent.

21. Yunfeng Capital is an exempted limited partnership established under the laws of the Cayman Islands. It is an investment fund established for the purpose of making portfolio investments in accordance with its investment guidelines and engaging in such other activities incidental or ancillary thereto, including, without limitation, holding interests in Parent and completing the transactions contemplated by the Merger Agreement, including the merger and the related financing transactions.

22. TF Capital is an exempted limited partnership established under the laws of the Cayman Islands whose principal business is private equity investment activities.

23. Velvet Investment is a private company limited by shares formed under the laws of Singapore whose principal business is investment holding.

24. Yihong Yao is the Chief Scientific Officer of the Company.

25. Li (Helen) Zhang is the Chief Production Officer of the Company.

26. Chengxiang (Chase) Dai is the General Manager of the Regenerative Medicine Business Unit of the Company.

27. Dangdai is an exempted limited company incorporated under the laws of Hong Kong whose principal business is private equity investment activities.

28. Mission Right is a company with limited liability incorporated under the laws of the British Virgin Islands whose principal business is investment holding.

29. Wealth Map is a company with limited liability incorporated under the laws of the British Virgin Islands whose principal business is investment holding.

30. Earls Mills is a company with limited liability incorporated under the laws of the British Virgin Islands whose principal business is investment holding.

31. Sailing Capital, an exempted limited partnership established under the laws of the Cayman Islands, is a global private equity firm focused on investments in the healthcare, technology and consumer sectors.

32. OPEA is a company limited by shares incorporated under the laws of Italy whose principal business is private equity investment.

33. Maplebrook is an exempted company with limited liability incorporated under the laws of the Cayman Islands whose principal business is private equity investment activities.

34. Full Moon is a company with limited liability incorporated under the laws of the British Virgin Islands whose principal business is investment holding.

35. Viktor Pan has served as a Managing Director of Infotech Electronics Ind. Inc. since February 1999.

36. Zheng Zhou is a retiree and is a Hong Kong citizen.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

37.     CBMG is a clinical-stage biopharmaceutical company committed to using its proprietary cell-based technologies to develop immunotherapies for the treatment of cancer and stem cell therapies for the treatment of degenerative diseases. The Company is a leader in the cell therapy industry through its diverse, multi-target, broad pipeline ranging from immuno-oncology, featuring CAR-T, TCR-T and TIL to regenerative medicine. CBMG's end-to-end platform enables discovery, development and manufacturing of cell-based therapies from concept to commercial manufacturing in a cost-efficient manner. The Company's in-house cell therapy manufacturing is comprised of a semi-automated, fully closed system and can manufacture high quality plasmids, and serum-free reagents as well as viral vectors for our immuno-oncology cell therapy products.

38.     CBMG's technologies include two major platforms: (i) immune cell therapy for treatment of a broad range of cancer indications, and (ii) regenerative medicines using human adipose-derived mesenchymal progenitor cells for treatment of joint diseases.

**The Proposed Transaction**

39.     On August 12, 2020, CBMG issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> GAITHERSBURG, Md. and SHANGHAI, Aug. 12, 2020 -- Cellular Biomedicine Group, Inc. (Nasdaq: CBMG) ("Company," "CBMG," "we" or "our"), a biopharmaceutical firm engaged in the drug development of immunotherapies for cancer and stem cell therapies for degenerative diseases, announced today that it has signed a definitive merger agreement to be acquired by a newly-formed entity ("Parent") formed on behalf of a consortium consisting of (i) Bizuo (Tony) Liu (CEO of CBMG) and certain other members of CBMG management (Yihong Yao, Li (Helen) Zhang and Chengxiang (Chase) Dai) (collectively, the "Management Rollover Stockholders"), (ii) Dangdai International Group Co., Limited, Mission Right Limited, Wealth Map Holdings Limited, Earls Mill Limited, OPEA SRL, Maplebrook Limited, Full Moon Resources Limited, Viktor Pan and Zheng Zhou

(together with the Management Rollover Stockholders, the "Consortium Rollover Stockholders") and (iii) Yunfeng Fund III, L.P., TF Capital Fund III L.P., Velvet Investment Pte. Ltd., and Bizuo (Tony) Liu (the "Equity Investors").

Under the terms of the merger agreement, CBMG's stockholders will receive US$19.75 in cash for each outstanding share of common stock held immediately prior to the effective time of the merger, other than (i) the shares owned by Parent or its subsidiaries, (ii) the shares held by CBMG as treasury stock, (iii) certain shares held by rollover stockholders, including the Consortium Rollover Stockholders (collectively, the "Rollover Stockholders") and (iv) the shares in respect of which appraisal rights have been properly and validly exercised under Delaware law.  In connection with the Merger, the shares held by the Rollover Stockholders will be cancelled without payment of any consideration and the Rollover Stockholders will subscribe for newly-issued shares of Parent.  The Rollover Stockholders collectively hold approximately 51.5% of the outstanding CBMG shares.

The US$19.75 per share price represents a premium of approximately 31.4% over the 30 trading-day average price of the Company's common stock as of August 11, 2020, and a premium of approximately 11.8% over CBMG's closing stock price on November 8, 2019, the last trading day prior to the public announcement of the consortium's initial proposal.

The Company's Board of Directors, acting on the unanimous recommendation of the special committee formed by the Board of Directors (the "Special Committee"), approved the merger agreement and the transactions contemplated by the merger agreement and resolved to recommend that the Company's stockholders adopt the merger agreement and approve the merger.  The Special Committee, which is comprised solely of independent and disinterested directors of the Company, exclusively negotiated the terms of the merger agreement with Parent, with the assistance of its independent financial and legal advisors.

Under the terms of the merger agreement, CBMG (at the direction of the Special Committee) will conduct a 30-day "go shop" process, during which CBMG is permitted to solicit, initiate, facilitate or encourage acquisition proposals and to participate in discussions or negotiations with respect to any acquisition proposal. Following the "go shop" process, CBMG may respond to certain unsolicited acquisition proposals and, during the first 15-day period following the "go shop" process, CBMG may continue to engage with certain third parties that have made acquisition proposals during the "go shop" process, in each case, subject to the terms and conditions of the merger agreement.  CBMG will have the right to terminate the definitive agreement to accept a superior proposal, if one is received, subject to the terms and conditions of the merger agreement.  There can be no assurance that this "go shop" process will result in a superior proposal or that any other transaction will be approved or completed.  CBMG does not intend to disclose

developments with respect to the "go shop" process unless and until the Special Committee makes a determination requiring further disclosure.

Upon closing of the merger, CBMG will become a wholly owned subsidiary of Parent. CBMG is expected to remain headquartered in Maryland. The merger is subject to approval by CBMG's stockholders, including a non-waivable condition requiring approval by the holders of a majority of the outstanding shares of CBMG common stock that are not beneficially owned by Parent, the Rollover Stockholders, the Equity Investors or their respective affiliates, as well as regulatory and certain other customary closing conditions. The merger is not subject to a financing condition. The Company will call a meeting of stockholders for the purpose of voting on the adoption of the merger agreement in due course. If completed, the merger will result in the Company becoming a privately held company, and CBMG's common stock would no longer be listed on the NASDAQ Capital Market.

**Insiders' Interests in the Proposed Transaction**

29. CBMG insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and CBMG's public stockholders.

30. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with the Buyer Consortium. Pursuant to the Merger Agreement, all outstanding stock options, restricted stock units ("RSUs"), and performance share units ("PSUs"), will vest and convert into the right to receive cash payments. The following table summarizes the value of the Company options, RSUs, and PSUs that Company insiders stand to receive:

| Named Executive Officer | Number of securities underlying unvested Stock Options (#) | Stock Option exercise price ($) | Number of unvested RSUs (#) | Market value of unvested RSUs ($)(7) | Number of unvested PSUs (#) | Market value of unvested PSUs ($)(7) |
|---|---|---|---|---|---|---|
| Tony (Bizuo) Liu (1) | 12,500 | $ 12.40 | — | — | — | — |
| Andrew Chan (2) | 2,403 | $ 12.40 | — | — | — | — |
| Yihong Yao (3) | 2,764 | $ 12.40 | — | — | — | — |
| Tony (Bizuo) Liu (4) | — | — | 12,500 | 228,750 | 240,000 | 4,392,000 |
| Andrew Chan (5) | — | — | 6,576 | 120,341 | 48,000 | 878,400 |
| Yihong Yao (6) | — | — | 2,764 | 50,581 | 54,000 | 988,200 |

31. Moreover, if they are terminated in connection with the Proposed Transaction, CBMG's named executive officers stand to receive substantial cash severance payments as set

forth in the following table:

**Golden Parachute Compensation**

| Name | Cash Severance ($)(1) | Unvested Equity ($)(2) | Perquisites/ Benefits ($)(3) | Other ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Tony (Bizuo) Liu | $ 948,609 | $ 4,943,250 | $ 13,273 | $ 35,000 | $5,940,132 |
| Andrew Chan | $ 748,563 | $ 1,036,673 | $ 57,269 | $ 35,000 | $1,877,505 |
| Yihong Yao | $ 717,846 | $ 1,111,486 | $ 29,621 | $ 35,000 | $1,893,953 |

**The Proxy Statement Contains Material Misstatements or Omissions**

32. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to CBMG's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

33. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Special Committee's financial advisor, Jefferies; and (ii) the background process leading to the Proposed Transaction.

*Material Omissions Concerning the Company's Financial Projections and Jefferies' Financial Analyses*

34. The Proxy Statement omits material information regarding the Company's financial projections.

32. According to the Proxy Statement, "[o]n March 18, 2020, the Special Committee held a telephonic meeting to review certain financial forecasts for the Company prepared by Company management for the fiscal years ending December 31, 2020 through December 31, 2030 (the "March Management Forecasts")." Proxy Statement at 44. At the meeting, Charles Zhou, a Company financial analyst, "presented the March Management Forecasts to the Special Committee and discussed with the Special Committee certain assumptions underlying the March

Management Forecasts, including certain assumptions with respect to the probability of success of certain products under development." *Id.* Then, at its March 22, 2020 meeting, the Special Committee's financial advisor Jefferies reviewed, among other things, the March Management Forecasts with the Special Committee. Following discussion and based on its analyses of the March Management Forecasts, the Special Committee determined that the Buyer Consortium's then-current proposal of $19.50 "was not compelling" and determined to provide a counterproposal of $22.00. *Id.* at 45. The Proxy Statement, however, fails to disclose the March Management Forecasts or the "assumptions underlying the March Management Forecasts, including certain assumptions with respect to the probability of success of certain products under development." *Id.* at 44.

33. The Proxy Statement similarly fails to disclose the "recent clinical results relating to one of the Company's products and the potential impact of such results of the Company" (*id.* at 50, 52) discussed by the Special Committee at its June 11, 2020 and July 7, 2020 meetings. These clinical results were one of the Special Committee's bases for determining that management should revise the March Management Forecasts. *Id.* at 52.

34. Further, according to the Proxy Statement, at the Special Committee's July 23, 2020 meeting it "discuss[ed] certain updates to the March Management Forecasts (the "July Management Forecasts"), which updates reflected certain developments with respect to the Company's individual products, including certain assumptions as to probability of success and **certain product development delays resulting from the COVID-19 pandemic**." *Id.* at 54 (emphasis added). However, as of April 2, 2020, the "consensus of the Special Committee was that the COVID-19 pandemic did have an impact on the Company's operations[.]" *Id.* at 46. The

Proxy Statement fails to disclose the Special Committee's view of the impact of the COVID-19 impact on the Company as of July 23, 2020.

35.     In addition, with respect to the July Management Forecasts, the Proxy Statement fails to disclose all line items underlying EBIT, EBITDA, NOPBT, and NOPAT.

36.     The Proxy Statement also omits material information regarding Jefferies' financial analyses.

37.     With respect to Jefferies' *Discounted Cash Flow Analysis ("DCF")*, the Proxy Statement states: "Jefferies performed a [DCF] of the Company by calculating the estimated present value of the standalone **unlevered, after-tax free cash flows** that the Company was forecasted to generate during the second half of the calendar year ending December 31, 2020 through the calendar year ending December 31, 2030[.]" *Id.* at 73 (emphasis added). The Proxy Statement however discloses **free cash flow**. *Id.* at 78. The Proxy Statement must clarify whether Jefferies utilized unlevered free cash flows or free cash flows in its *DCF*. The omission of this information renders the summary of Jefferies' *DCF* materially misleading.

38.     Without such undisclosed information, CBMG stockholders cannot evaluate for themselves whether the financial analyses performed by Jefferies were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Jefferies' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

39. The omission of this material information renders the statements in the "Certain Company Forecasts" and "Opinion of Jefferies LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

40. The Proxy Statement omits material information relating to the process leading to the Proposed Transaction.

41. For example, the Proxy Statement fails to fully disclose the details of defendant Liu's involvement in the sale process and his negotiations and communications with other members and potential members of the Buyer Consortium. According to the Proxy Statement, between October 12, 2019 and November 9, 2019, defendant Liu discussed the possibility of a "going private transaction" with each of (1) Hillhouse Bio Holdings, L.P. ("HBH") and TF Capital (between November 2 and November 9, 2019), (2) the Management Rollover Stockholders (on November 2, 2019), and (3) Mission Right (on November 5, 2019). *Id.* at 36. The Proxy Statement, however, fails to fully disclose the details of these negotiations.

42. The Proxy Statement further sets forth:

> From November 6, 2019 to November 9, 2019, Mr. Liu, HBH and TF Capital and their respective legal counsels negotiated and finalized the terms of the consortium agreement, including the per share merger consideration to be offered in connection with a non-binding proposal to acquire all outstanding shares of Common Stock not already owned by such parties.

*Id*. The Proxy Statement fails, however, to disclose the "finalized [ ] terms of the consortium agreement, including the per share merger consideration to be offered in connection with a non-binding proposal." *Id.*

43. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other CBMG stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the financial analyses supporting Jefferies' fairness opinion and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with

these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

55. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

57. Plaintiff repeats all previous allegations as if set forth in full.

58. The Individual Defendants acted as controlling persons of CBMG within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of CBMG, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

61. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, CBMG's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed

|   |   |
|---|---|
|   | Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to CBMG stockholders; |
| B. | In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff; |
| C. | Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder; |
| D. | Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and |
| E. | Granting such other and further relief as this Court may deem just and proper. |

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 15, 2021                                **WEISSLAW LLP**

                                                                           By  */s/ Richard A. Acocelli*
                                                                           Richard A. Acocelli
                                                                           1500 Broadway, 16th Floor
                                                                           New York, New York 10036
                                                                           Tel: (212) 682-3025
                                                                           Fax: (212) 682-3010
                                                                           Email: racocelli@weisslawllp.com

                                                                           *Attorneys for Plaintiff*